Lynn S. Walsh, OSB #924955
email: walsh@europa.com
209 SW Oak Street, Suite 400
Portland, Oregon 97204
Telephone: 503-790-2772
Facsimile: 503-227-6840

Attorney for Amicus Curiae
Partnership for Safety and Justice

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| PORTLAND DIVISION PRISON LEGAL NEWS, a project of the HUMAN RIGHTS DEFENSE CENTER,<br><br>                Plaintiff,<br><br>    vs.<br><br>COLUMBIA COUNTY, COLUMBIA COUNTY SHERIFF'S OFFICE, JEFF DICKERSON, individually and in his capacity as Columbia County Sheriff,<br><br>                Defendants. | NO.  CV 12-0071-SI<br><br>PARTNERSHIP FOR SAFETY AND JUSTICE MOTION FOR LEAVE TO FILE AMICUS BRIEF |

Pursuant to LR 7-1, the Partnership for Safety and Justice (PSJ) has conferred with the

parties regarding this Motion for Leave to File Amicus Brief.  Plaintiff has no objections.

Defendants object to this Motion unless given an opportunity to file a responsive brief.   PSJ

has no objection to allowing time to file responsive briefs.  Plaintiff has informed PSJ counsel

Page 1    PARTNERSHIP FOR SAFETY AND JUSTICE MOTION FOR LEAVE TO
FILE AMICUS BRIEF

that they have no objection to the defendants filing a responsive brief.

PSJ respectfully moves, pursuant to the Court's inherent authority, to file a brief as

Amicus Curiae regarding whether the Columbia County Jail should be preliminarily enjoined

from enforcing its original or revised forms of its Postcard-only Policy.

A Memorandum providing the facts and authority in support of this Motion is being

filed with this Motion.  The Amicus Brief is attached as Exhibit A to this Motion.

DATED this 6th day of March, 2012.


Respectfully submitted,


/s/ Lynn S. Walsh
Lynn S. Walsh, OSB #924955
Attorney for PSJ
walsh@europa.com
503-790-2772


PARTNERSHIP FOR SAFETY AND JUSTICE MOTION FOR LEAVE TO
FILE AMICUS BRIEF

LYNN S. WALSH
209 S.W. Oak St., #400
Portland, OR 97204
503-790-2772
503-227-6840 (fax)

CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of March, 2012, I served true copies of the foregoing MOTION FOR LEAVE TO FILE AMICUS BRIEF on CM/ECF participants listed below as reflected on the Notice of Electronic Filing:

Steven A. Kraemer
Hart Wagner, LLP
1000 S.W. Broadway, Twentieth Floor
Portland, OR 97205
sak@hartwagner.com

Katherine C. Chamberlain
MacDonald Hoague & Bayless
705 Second Avenue, #1500
Seattle, WA 98104
katherinec@mhb.com

Gregory R. Roberson
Hart Wagner, LLP
1000 S.W. Broadway, Twentieth Floor
Portland, OR 97205
grr@hartwagner.com

Jesse A. Wing
MacDonald Hoague & Bayless
705 Second Avenue, #1500
Seattle, WA 98104
jessew@mhb.com

Marc D. Blackman
Ransom Blackman LLP
1001 S.W. 5th Ave., #1400
Portland, OR 97204
mark@ransomblackman.com

Lance Weber
Human Rights Defense Center
1037 Western Ave., 2nd Floor
West Brattleboro, VT 05303
lweber@humanrightsdefensecenter.org

Dated:  March 6, 2012

_____/s/ Lynn S. Walsh_____
Lynn S. Walsh, OSB #92495
503-790-2772
walsh@europa.com

PARTNERSHIP FOR SAFETY AND JUSTICE MOTION FOR LEAVE TO
FILE AMICUS BRIEF

Lynn S. Walsh, OSB #924955
email: walsh@europa.com
209 SW Oak Street, Suite 400
Portland, Oregon 97204
Telephone: 503-790-2772
Facsimile: 503-227-6840

Attorney for Amicus Curiae
Partnership for Safety and Justice

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| PORTLAND DIVISION PRISON LEGAL NEWS, a project of the HUMAN RIGHTS DEFENSE CENTER, <br><br> Plaintiff, <br><br> vs. <br><br> COLUMBIA COUNTY, COLUMBIA COUNTY SHERIFF'S OFFICE, JEFF DICKERSON, individually and in his capacity as Columbia County Sheriff, <br><br> Defendants. | NO.  CV 12-0071-SI <br><br> BRIEF OF AMICUS CURIAE PARTNERSHIP FOR SAFETY AND JUSTICE IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |

The Partnership for Safety and Justice (PSJ) submits this amicus curiae brief in support of Plaintiff's Motion for Preliminary Injunction.  For the following reasons, this Court should Grant Plaintiff PLN's motion for an order preliminarily enjoining Defendants from enforcing unconstitutional jail mail policies and practices.

Page 1     AMICUS BRIEF OF PARTNERSHIP FOR SAFETY AND JUSTICE IN
SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

**EXHIBIT A**
**Page 1 of 13**

# I. IDENTITY AND INTEREST OF <u>AMICUS</u>

Partnership for Safety and Justice (PSJ) is a multi-faceted, statewide advocacy organization based in Portland, Oregon.  PSJ was founded in 1999 originally as the Western Prison Project.  It has developed a pioneering and provocative model for its work – one that brings together all of those most directly affected by crime, violence and the criminal justice system (survivors of crime, people convicted of crime, and the families of both) to advocate for a system that is just and that more effectively builds safer, healthier communities.

PSJ is the first advocacy organization in the country to unite all of these constituencies. PSJ believes this approach offers a holistic perspective and a valuable strategy for shifting Oregon towards more effective, prevention-based approaches for creating community safety.

PSJ provides numerous resources to prisoners in both jails and prisons when such information is requested by prisoners.  One of PSJ's programs is the Prisoner Mail Program.  PSJ receives mail from prisoners across the country requesting information on various topics including medical issues, mental health issues, transition issues, and other inmate issues.  Each incarcerated person who writes to PSJ receives a free packet which includes a ten page Prisoner Support Directory and a copy of PSJ's newsletter Justice Matters.  The purpose of the mail project is to provide resources to help prisoners advocate for themselves.  Last year, PSJ sent out 1600 packets to prisoners across the country.  The packets are sent in a stamped envelope.  Under Columbia County Jail's revised policy, PSJ's packets to Columbia County Jail prisoners would be rejected.

This case involves a significant violation of the First Amendment rights of anyone

Page 2      AMICUS BRIEF OF PARTNERSHIP FOR SAFETY AND JUSTICE IN
            SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

## EXHIBIT A
## Page 2 of 13

wishing to engage in written mail correspondence with a Columbia County Jail inmate. Because of the impact on fundamental rights of numerous individuals, and the fact that other jails within the District of Oregon are implementing such policies, the issue raised by this case is of great public interest. The far-reaching consequences of this case warrant the Court's exercise of discretion to accept this <u>amicus</u> brief.

## II.  FACTUAL BACKGROUND

The pleadings filed in this case indicate that in April 2010, the Columbia County Jail adopted a mail policy that limited incoming and outgoing mail (excluding legal and "official") mail) to postcards only. When the postcard policy was announced on December 23, 2009, the reasons given for the change were that "[t]he processing of inmate mail is very time consuming and labor intensive," "mail coming in sealed envelopes increases the likelihood that contraband will make its way through the security measures we set up," and "[g]oing to postcards will cut down on the time we need to take in that screening process, thus saving the taxpayer the costs involved in that screening." Apparently, the prisoners' and correspondents' constitutional right of expression and privacy was not considered in adopting the postcard policy. According to Sgt. Cutright's declaration (Docket #30, ¶4), the revised mail policy saves a deputy only 30 to 60 minutes a day. Sgt. Cutright fails to specify the amount of money, if any, the policy saves.

Sheriff Dickerson's declaration indicates that since adopting the postcard-only policy, the policy has been revised four times. The most recent revision was made effective on February 10, 2012, which was ten days after Plaintiff filed its Motion for Preliminary Injunction.

Page 3         AMICUS BRIEF OF PARTNERSHIP FOR SAFETY AND JUSTICE IN
                SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

LYNN S. WALSH
209 S.W. Oak St., #400
Portland, OR 97204
503-790-2772
503-227-6840 (fax)

**EXHIBIT A**
**Page 3 of 13**

The mail policy used to be a simple five page easy-to-understand policy.  It is now a 17-page confusing document.

Even though the policy has gone through numerous revisions, Defendants are persisting in retaining the postcard-only policy that forces the use of postcards for all incoming and outgoing personal mail.  Personal mail is defined as "[p]ostcards mailed to or from family, friends, organizations, businesses, or other unofficial entities."  (Docket #32-6, Dickerson Decl., Ex. F, p. 2.)  Under this policy, an inmate at the Columbia County Jail cannot correspond with their employer, civil rights organizations, spouses, children, relatives, significant others, or Amicus PSJ unless it is by postcard.  In fact, under the current mail policy, prisoners at the Columbia County Jail would be entirely precluded from participating in PSJ's Prisoner Mail Program.

Defendants have been revising their mail policy arguing that it renders PLN's claims as moot, thus allowing some of PLN's materials to enter the jail, yet the policy continues to read as though it excludes all businesses, civil rights organizations, and individuals' correspondence that is not on a postcard.   The defendants correctly point out that they have the burden to persuade the court that the challenged conduct will not reasonably be expected to recur. (Docket #29, p. 10.)  Defendants cannot meet that burden, because if they implement the terms of their revised policy, the unconstitutional conduct will continue.

### III.  ARGUMENT

### A.  The Postcard-Only Mail Policies Violate the First Amendment Rights of Prisoners

Page 4          AMICUS BRIEF OF PARTNERSHIP FOR SAFETY AND JUSTICE IN
                SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

LYNN S. WALSH
209 S.W. Oak St., #400
Portland, OR 97204
503-790-2772
503-227-6840 (fax)

**EXHIBIT A**
**Page 4 of 13**

**and All who Correspond with Prisoners**.

The right to receive and send mail is unquestionably protected by the First Amendment. Blount v. Rizzi, 400 U.S. 410 (1971). The law is also clear that jail prisoners generally retain the First Amendment right to send and receive mail. See, e.g., Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); Procunier v. Martinez, 416 U.S. 396 (1974), overruled in part on other grounds, Thornburgh (noting that correspondence between a prisoner and an outsider implicates the First and Fourteenth Amendments); Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995). The Martinez case sets forth the requirements for a constitutional policy on outgoing jail mail, while the requirements of Turner v. Safley, 482 U.S. 78 (1987), are used to evaluate the constitutionality of a jail mail policy regarding incoming mail, Thornburgh, 490 U.S. at 413.

It is not only inmate rights, but the First Amendment rights of the many people who correspond with them that are at stake here. Written correspondence is a two-way street, as the United States Supreme Court has recognized:

> Communication by letter is not accomplished by the act of writing words on paper. Rather, it is effected only when the letter is read by the addressee. Both parties to the correspondence have an interest in securing that result, and censorship of communication between them necessarily impinges on the interest of each. . . . The wife of a prison inmate who is not permitted to read all that her husband wanted to say to her has suffered an abridgment of her interest in communicating with him as plain as that which results from censorship of her letter to him. In either event, censorship of prisoner mail works a consequential restriction on the First and Fourteenth Amendments rights of those who are not prisoners.

Procunier v. Martinez, supra, 416 U.S. at 408-09.

In fact, there is no doubt that the postcard-only policy for both incoming and outgoing

AMICUS BRIEF OF PARTNERSHIP FOR SAFETY AND JUSTICE IN
SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

LYNN S. WALSH
209 S.W. Oak St., #400
Portland, OR 97204
503-790-2772
503-227-6840 (fax)

**EXHIBIT A**
**Page 5 of 13**

mail will have severely harmful effects on both the prisoners and their correspondents.  For example, an inmate will not be comfortable discussing with family members sensitive topics such as relationship issues, child-rearing issues, pregnancy, sexually transmitted diseases, disabilities, mental health issues, medical conditions, financial issues, and even employment or business matters, if required to do so on a postcard.   The policy also prevents prisoners and their correspondents (such as children) from engaging in entire forms of written communications, such as expressive or artistic drawings that do not fit on a postcard.  Greeting cards are disallowed under the policy.  And, the jail specifically prohibits the mailing of jail forms (such as grievances) to someone who might be able to help the inmate complete the form if the inmate is unable to comprehend or complete the form on his own.[1]  The effect, and perhaps the purpose, of this policy is to isolate prisoners from those on the outside, and from those who provide support to prisoners such as family members, friends, and organizations such as PSJ.

1.  <u>The Postcard-Only Policy for Outgoing Mail is Clearly Unconstitutional</u>.

The Defendants fail to analyze the postcard-only policy for outgoing mail under the correct test, i.e., they incorrectly apply the <u>Turner</u> test to outgoing mail.  As stated above, the <u>Thornburgh</u> Court distinguished incoming and outgoing correspondence as follows:

> [W]e acknowledge today that the logic of our analyses in *Martinez* and *Turner* requires that *Martinez* be limited to regulations concerning outgoing correspondence.  As we have observed, outgoing correspondence was the

---

[1]  Section 34. f. of the postcard-only policy appears to prohibit the mailing of jail forms to anyone, including attorneys.  (Docket #32-6, Dickerson Decl. Ex. F, p. 12.)

Page 6          AMICUS BRIEF OF PARTNERSHIP FOR SAFETY AND JUSTICE IN
                SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

LYNN S. WALSH
209 S.W. Oak St., #400
Portland, OR 97204
503-790-2772
503-227-6840 (fax)

**EXHIBIT A**
**Page 6 of 13**

central focus of our opinion in *Martinez*.  The implications of outgoing correspondence for prison security are of a categorically lesser magnitude than the implications of incoming materials.

Thornburgh, 490 U.S. at 413.   Under the Martinez standard, the test for the constitutional validity of a regulation affecting a prisoner's outgoing mail is:

> First, the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression. Prison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements.  Rather they must show that a regulation authorizing mail censorship furthers one or more of the substantial governmental interests of security, order, and rehabilitation.  Second, the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved.  Thus a restriction on inmate correspondence that furthers an important or substantial interest of penal administration will nevertheless be invalid if its sweep is unnecessarily broad.

 Martinez, 416 U.S. at 413-14.

Restricting prisoners' outgoing mail to postcards is simply not necessary to serve the government's interest in preserving order and security within the jail or crime prevention and, therefore, cannot satisfy the Martinez standard.  The postcard-only policy is completely unnecessary because it is settled law that jail officials may inspect outgoing letters and require that they be submitted to jail staff in unsealed envelopes to facilitate inspection.  Beville v. Ednie, 74 F.3d 210, 213-14 (10th Cir. 1996); Stow v. Grimaldi, 993 F.2d 1002, 1004 (1st Cir. 1993). In fact, it is somewhat incredible that the Columbia County Jail has chosen to engage in this litigation as opposed to inspecting the mere forty pieces of outgoing mail each day that is submitted to them in unsealed envelopes.  The defendants maintain that the postcard-only policy is a cost-saving measure, yet defendants have not offered any evidence of how much

Page 7        AMICUS BRIEF OF PARTNERSHIP FOR SAFETY AND JUSTICE IN
               SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

LYNN S. WALSH
209 S.W. Oak St., #400
Portland, OR 97204
503-790-2772
503-227-6840 (fax)

**EXHIBIT A**
**Page 7 of 13**

money, if any, the policy saves.    See Beerheide v. Suthers, 286 F.3d 1179, 1189 (10th Cir. 2002) ("[i]n order to warrant deference, prison officials *must present credible evidence* to support their stated penological goals"  (emphasis in original).   In any event, a mere desire to cut down on costs - an interest that is not unique to the correctional setting - does not and cannot satisfy the Martinez standard for outgoing mail.  See also, Battle v. Anderson, 376 F. Supp. 402, 425 (E.D. Okla. 1974), aff'd in part and rev'd in part, 993 F.2d 1551 (10th Cir. 1993) (outgoing mail restrictions not justified when imposed "solely to serve the administrative convenience of the defendants, without furthering any demonstrated interest in the orderly operation of the institution or the rehabilitation of its prisoners").    The unconstitutionality of the postcard-only policy for outgoing mail was recently recognized by the Northern District of Georgia which ruled that a jail inmate stated a viable claim, explaining that censorship was a plausible purpose of the policy:

> -outgoing personal correspondence from prisoners-did not, by its very nature, pose a serious threat to prison order and security. . . . [Johnson's] allegations state a plausible claim that the Jail's policy violates the test.  It is plausible, if not likely, that the alleged postcard policy exists for security reasons.  It also is plausible, however, that the policy exists to facilitate improper censorship of outgoing mail.  In either case, Plaintiff may argue that Jail officials could address their concerns by the less restrictive measure of requiring that general outgoing mail be placed in unsealed envelopes-as they allegedly do for attorney mail-instead of altogether limiting the type and size of the medium used for such mail.  See *Thornburgh*, 490 U.S. at 412 (observing that "the implications for security are far more predictable" with outgoing mail).

Johnson v. Smith, 2011 WL 344085 (N.D. Ga. 2011) (Slip Opin. 2/1/11).

2.  The Postcard-only Policy for Incoming Mail Fails Under the *Turner* Analysis.

There is no evidence that restricting to postcards all incoming mail from family, friends,

Page 8          AMICUS BRIEF OF PARTNERSHIP FOR SAFETY AND JUSTICE IN
                SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

LYNN S. WALSH
209 S.W. Oak St., #400
Portland, OR 97204
503-790-2772
503-227-6840 (fax)

**EXHIBIT A**
**Page 8 of 13**

employers, employees, counselors, civil rights organizations, and the like is "rationally related to a legitimate and neutral governmental objective."  (Turner Factor 1, 482 U.S. at 89-90). Columbia County argues that the postcard-only policy is rationally related to a legitimate interest in jail security, because "reviewing personal mail for prohibited content is more time-consuming when the mail comes from an inmate or an inmate's family and friends, as opposed to plaintiff's business mail, because personal mail is more likely to contain prohibited topics." (Docket #29, Response to Motion for Preliminary Injunction, p. 15.)   Yet, under their revised postcard-only policy, personal mail includes mail mailed to or from "family, friends, *organizations, businesses, or other unofficial entities*." (Emphasis supplied; Docket #32-6, p. 2.) The policy makes no distinction between an inmate's "personal" mail and "business" mail.

In any event, as discussed above and below, the postcard-only policy fails to promote safety and security by increasing the prisoners' stress levels, fails to provide cost savings, and undermines the governmental objective of reducing recidivism.  A jail policy that harms governmental interests at the same time as it violates significant constitutional rights of prisoners and all who wish to correspond with them is hardly "rational."

Second, Turner Factor 2 considers whether alternative means of exercising the impinged right remain open.  Turner, 482 U.S. at 90.  The defense argues that prisoners, their family, and their friends have sufficient alternative avenues of communication.  Again, the defense overlooks the fact that their postcard-only policy also applies to an inmate's mail to and from businesses and organizations which typically do not communicate by postcard. Whether it is business mail, or family and friends' mail, the policy's restrictions on incoming

Page 9        AMICUS BRIEF OF PARTNERSHIP FOR SAFETY AND JUSTICE IN
               SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

LYNN S. WALSH
209 S.W. Oak St., #400
Portland, OR 97204
503-790-2772
503-227-6840 (fax)

**EXHIBIT A**
**Page 9 of 13**

mail do not provide adequate alternative means of communication.  Many topics can only

reasonably be discussed in closed letter correspondence if phone calls or in-person visits are

not possible.  Many people are not able to make in-person visits to the jail and cannot afford

the exorbitant cost of collect phone calls.  Likewise, many people only have cell phones which

do not accept collect phone calls from the jail.  Thus, the only form of communication available

for these prisoners and their correspondents is by written correspondence.  It is just not

possible to conduct any meaningful business or personal matter on a 5-1/2" tall postcard.

        The third <u>Turner</u> Factor, 482 U.S. at 90, considers whether the right at issue "can be

exercised only at the cost of significantly less liberty and safety for everyone else, guards and

other prisoners alike."  There is no evidence that there would be significant costs to returning

to the policy permitting incoming letters, subject to inspection for contraband and other

criminal activity.  This was the policy in place at the Columbia County Jail for many years prior

to the enactment of the postcard-only policy.

        The fourth <u>Turner</u> Factor, 482 U.S. at 90-91, considers whether "obvious, easy

alternatives" to the challenged regulation exist.  This factor is easily satisfied because the jail

can resume the constitutional policy it had for years prior to enacting the postcard-only policy.

The defense argues that due to the "time-consuming nature of screening personal mail" that

"discarding the postcard restriction would have more than a de minimis cost to the jail."

(Docket #29, Response to Motion for Preliminary Injunction, p. 20.)  Yet,  Sgt. Cutright's

declaration admits that only 30 to 60 minutes of one jail deputy's time is saved in a day as a

result of the new policy, which would likely be only a few dollars a day.  Such trivial savings

Page 10        AMICUS BRIEF OF PARTNERSHIP FOR SAFETY AND JUSTICE IN
                SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

LYNN S. WALSH
209 S.W. Oak St., #400
Portland, OR 97204
503-790-2772
503-227-6840 (fax)

**EXHIBIT A**
**Page 10 of 13**

cannot justify a restriction on First Amendment rights.  See Beerheide, 286 F.3d at 1192

(holding that because Department of Corrections failed to show that providing free kosher

meals to Jewish prisoners would have more than a *de minimis* cost in terms of finances,

staffing, and administration, it failed to show that charging for kosher meals was justified

under Turner.)

All four Turner Factors lead to the conclusion that the current policy is unconstitutional.

Enjoining it is warranted because curtailing constitutionally protected speech never advances

the public interest.  ACLU v. Reno, 217 F.3d 162, 180 (3d Cir. 2000), vacated on other grounds

sub nom., Ashcroft v. ACLU, 533 U.S. 973 (2001).

**B.  It is Critical for Prisoners to Have Free Flowing Communication with Family,
Friends, and the Public Outside of Jail.**

It is well known that prisoners' maintenance of social connections with their family, life

partners, friends, employers, education and housing programs, and religious comfort and

sobriety support networks, among others, are essential to prisoners' rehabilitation and

successful reintegration into society upon their release.  Because the revised postcard policy

will weaken and disrupt so many significant relationships for prisoners, it is in effect a policy

that isolates prisoners at a time when they are most in need of that support.

It is already difficult for prisoners to maintain relationships with their children while

incarcerated.  The revised postcard policy poses a devastating threat to this relationship.  It

drastically reduces the amount of written communication prisoners can have with their

children, it disallows prisoners from receiving photographs of their children (unless they go to

LYNN S. WALSH
209 S.W. Oak St., #400
Portland, OR 97204
503-790-2772
503-227-6840 (fax)

**EXHIBIT A
Page 11 of 13**

the expense of turning the photo into a postcard), and it also makes communication with children who are too young to read extremely difficult since sending or receiving drawings (unless on a postcard) is banned.  The policy entirely precludes children from mailing school work, report cards, awards, etc. to a parent.

Likewise, the postcard-only policy dismisses the needs of children of incarcerated parents.  Research has shown a close connection between parental incarceration and adverse outcomes for children.  See Justice Strategies, *Children on the Outside: Voicing the Pain and Human Costs of Parental Incarceration* (Adverse outcomes for children of incarcerated parents include an increased likelihood of school failure, unemployment, mental health problems, and engaging in antisocial or delinquent behavior, including drug use.)  The research indicates that it is important that children have the ability to maintain regular contact with their incarcerated parent.  Having a postcard-only policy impedes the ability of children to maintain that contact.

Additionally, the inability to effectively communicate with the outside world serves to increase stress and boredom among jail prisoners, which increases the risk of mental health problems, or violence, with the result that the policy's implementation may actually result in a greater threat to the jail staff, and the community's safety upon the prisoner's release.   Far from satisfying the <u>Turner</u> test by "furthering" rehabilitation or safety, the postcard-only policy has exactly the opposite effect.  For that reason as well, it should be ruled unconstitutional.

## IV.  CONCLUSION

For the foregoing reasons, this Court should grant Plaintiff's Motion for Preliminary Injunction because the injunction is necessary to serve the public interest.  This is the first

Page 12    AMICUS BRIEF OF PARTNERSHIP FOR SAFETY AND JUSTICE IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

LYNN S. WALSH
209 S.W. Oak St., #400
Portland, OR 97204
503-790-2772
503-227-6840 (fax)

**EXHIBIT A**
**Page 12 of 13**

court in Oregon to deal with a postcard-only policy. A preliminary injunction serves the public

interest because it will provide guidance to other jail facilities around the state and beyond as

to what constitutes a constitutional jail mail policy.

DATED: __March 6, 2012___

Respectfully submitted,

___/s/ Lynn S. Walsh_____
Lynn S. Walsh, OSB #924955
Attorney for Partnership for Safety and
Justice

Page 13    AMICUS BRIEF OF PARTNERSHIP FOR SAFETY AND JUSTICE IN
SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

LYNN S. WALSH
209 S.W. Oak St., #400
Portland, OR 97204
503-790-2772
503-227-6840 (fax)

EXHIBIT A
Page 13 of 13