# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **PRISON LEGAL NEWS**, a project of the **HUMAN RIGHTS DEFENSE CENTER**, | Case No. 3:12-cv-00071-SI |
| Plaintiff, | **OPINION AND ORDER ON FEES AND EXPENSES** |
| v. | |
| **COLUMBIA COUNTY; COLUMBIA COUNTY SHERIFF'S OFFICE; JEFFREY DICKERSON,** individually and in his capacity as Columbia County Sheriff, | |
| Defendants. | |

Jesse A. Wing and Katherine C. Chamberlain, Macdonald, Hoague & Bayless, 1500 Hoge Building, 705 Second Avenue, Seattle, WA 98104; Lance Weber, Human Rights Defense Center, 1037 Western Avenue, Second Floor, West Brattleboro, VT 05303; Marc D. Blackman (deceased), Ransom Blackman, LLP, 1001 S.W. Fifth Avenue, Suite 1400, Portland, OR 97204. Of Attorneys for Plaintiff.

Steven A. Kraemer, Kari A. Furnanz, and Gregory R. Roberson, Hart Wagner, LLP, 1000 S.W. Broadway, 20th Floor, Portland, OR 97205. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

## INTRODUCTION

After a four-day bifurcated bench trial addressing only issues of liability and equitable relief, Plaintiff Prison Legal News ("PLN" or "Plaintiff") prevailed in its civil rights lawsuit under 42 U.S.C. § 1983 against Defendants Columbia County, the Columbia County Sheriff's Office, and Sheriff Jeffrey Dickerson (collectively "Defendants"). Section 1983 allows a cause of action against state and local governments and their officials for violations of a person's federal constitutional or statutory rights. Defendants operate the county jail in Columbia County, Oregon (the "Jail"). In its first claim (which Plaintiff called "Count One"), PLN asserted that Defendants' "postcard only" and "no magazine" policies for inmate mail violated PLN's First Amendment rights, as well as the First Amendment rights of inmates at the Jail and their correspondents in addition to PLN. In its second claim (which Plaintiff called "Count Two"), PLN asserted that Defendants' "notice and appeal" policy for rejected inmate mail violated PLN's Fourteenth Amendment procedural due process rights and the procedural due process rights of inmates and their correspondents. PLN prevailed on both claims, and the Court determined that PLN was entitled to declaratory and permanent injunctive relief. After the conclusion of the liability and equitable relief trial, the parties stipulated that Defendants would pay Plaintiff $15,000 to resolve Plaintiff's claim for money damages, thereby eliminating the need for another trial. After the Court entered Judgment, PLN timely moved for an award of attorney's fees and expenses. ECF 221. Defendants oppose PLN's motion. For the reasons that follow, the Court awards PLN $763,803.45 in attorney's fees and $38,373.01 in expenses.

## STANDARDS FOR ATTORNEY'S FEES

In a civil rights lawsuit brought under 42 U.S.C. § 1983, the district court may award the prevailing party its reasonable attorney's fees as part of costs. 42 U.S.C. § 1988(b); *A.D. v. Cal.*

PAGE 2 – OPINION AND ORDER ON FEES AND EXPENSES

*Highway Patrol*, 712 F.3d 446, 460 (9th Cir. 2013). A district court's disposition of a motion for attorney's fees must "provide a reasonably specific explanation for all aspects of a fee determination" in order to allow for "adequate appellate review." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 558 (2010).

The preferred method of calculating reasonable attorney's fees is the "lodestar" method. *Id.* at 551-52. This is because the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case, is readily administrable, and is objective. *Id.* Additionally, one purpose of the federal fee-shifting statutes is to ensure that a prevailing plaintiff's counsel receives a fee that is "sufficient to induce a capable attorney to undertake the representation of a meritorious . . . case." *Id.* at 552. The lodestar method of calculating attorney's fees yields a fee that is presumptively sufficient to achieve this objective. *Id.* Although the lodestar calculation results in a presumptively reasonable fee, this fee may be adjusted in certain circumstances. *Id.*

The lodestar amount is the product of the number of hours reasonably spent on the litigation multiplied by a reasonable hourly rate. *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009).[1] In making this calculation, the district court should take into consideration various reasonableness factors, including the quality of an attorney's performance, the results obtained, the novelty and complexity of a case, and the special skill and experience of counsel. *See Perdue*, 559 U.S. at 553-54; *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209 n.11 (9th Cir. 2013).

---

[1] It is "well established that time spent in preparing fee applications" is also compensable. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1210 (9th Cir. 2013) (quoting *Anderson v. Director, OWCP*, 91 F.3d 1322, 1325 (9th Cir. 1996) (quotation marks omitted)).

In determining the number of hours reasonably spent, "the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'" *McCown*, 565 F.3d at 1102 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). The party seeking an award of attorney's fees "has the burden of submitting billing records to establish that the number of hours it has requested [is] reasonable." *Gonzalez*, 729 F.3d at 1202.

The district court may determine, in one of two ways, whether hours are excessive, redundant, or otherwise unnecessary, and thus excludable. The court may conduct an hour-by-hour analysis of the fee request. *Id*. at 1203. Alternatively, "when faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure." *Id*. (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) (quotation marks omitted)). "[W]hen a district court decides that a percentage cut (to either the lodestar or the number of hours) is warranted, it must 'set forth a concise but clear explanation of its reasons for choosing a given percentage reduction.'" *Id.* (quoting *Gates*, 987 F.2d at 1400). The Ninth Circuit recognizes one exception to this rule: "'[T]he district court can impose a small reduction, no greater than 10 percent—a 'haircut'— based on its exercise of discretion and without a more specific explanation.'" *Id.* (alteration in original) (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)).

In addition, other courts, including the District of Oregon, specifically caution against both block-billing and providing vague or otherwise inadequate descriptions of tasks because these practices hinder a court's ability to assess the reasonableness of the time expended. *See, e.g.*, U.S. District Court, District of Oregon, Message from the Court Regarding Attorney Fee Petitions, *available at* http://www.ord.uscourts.gov/index.php/court-policies-517/fee-petitions (last updated Feb. 6, 2013). Applying this cautionary statement, United States Magistrate Judge

John Acosta has noted, "the court may excuse this method when the billing period is no more than three hours." *Noel v. Hall,* 2013 WL 5376542, at *6 (D. Or. Sept. 24, 2013). For block-billing periods in excess of three hours, however, Judge Acosta has reduced each applicable entry by fifty percent.

> Accordingly, the block-billed time requested over the three-hour maximum will be reduced by fifty percent. Such a reduction is warranted because the vague nature of the entry makes it impossible for the court to make *any* assessment as to the reasonableness of that time expended. *See Lyon v. Chase Bank USA, N.A.,* 656 F.3d 877, 892 (9th Cir. 2011) ("The fee award may be reduced if [plaintiff's] renewed request is supported only by block-billing statements of the relevant activity, although a fee award cannot be denied on this basis.").

*Id.* (alteration and emphasis in original).

After determining the number of hours reasonably spent, the district court then calculates the reasonable hourly rates for the attorneys and paralegals whose work comprise the reasonable number of hours used in calculating the lodestar amount. For this purpose, the "'prevailing market rates in the relevant community' set the reasonable hourly rates." *Gonzalez*, 729 F.3d at 1205 (quoting *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005)). "'Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits.'" *Id.* (quoting *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010)). Within this geographic community, the district court should consider the experience, skill, and reputation of the attorneys or paralegals involved. *Id.*

In determining reasonable hourly rates, typically "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). In addition, courts in the District of Oregon have the benefit of several billing

rate surveys. One useful survey is the Oregon State Bar 2012 Economic Survey ("OSB 2012 Survey"), which contains data on attorney billing rates based on type of practice, geographic area of practice, and years of practice. A copy of the OSB 2012 Survey is available at http://www.osbar.org/_docs/resources/Econsurveys/12EconomicSurvey.pdf (last visited on November 18, 2013).

Another useful survey, although somewhat more limited in scope, is the Morones Survey of Commercial Litigation Fees, updated as of January 1, 2012 ("Morones 2012 Survey"). The Morones 2012 Survey contains data on attorney billing rates based on years of experience but is confined to commercial litigation attorneys practicing in Portland, Oregon. The Morones 2012 Survey reports data for 306 attorneys from 18 law firms (out of 28 law firms requested to provide data). A copy of the Morones 2012 Survey is available at, among other places, the United States District Court for the District of Oregon PACER electronic case files in the case of *Prison Legal News v. Columbia County*, No. 3:12-cv-00071-SI (ECF 229-2 and ECF 231-2).

There is a strong presumption that the fee arrived at through the lodestar calculation is a reasonable fee. *Perdue*, 559 U.S. at 552. A district court may, however, adjust the lodestar amount in "rare" and "exceptional" cases, such as when a particular factor bearing on the reasonableness of the attorney's fee is not adequately taken into account in the lodestar calculation.[2] *See Perdue*, 559 U.S. at 552-54 (finding that, in certain circumstances, the superior

_____

[2] Factors that may be relevant to the reasonableness of a fee include: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) time limitations imposed by the client or the circumstances; (7) the amount involved and the results obtained; (8) the experience, reputation, and the ability of the attorneys; (9) the "undesirability" of the case; (10) the nature and length of the professional relationship with the client; and (11) awards in similar cases. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). Based on subsequent case law, a twelfth factor identified in *Kerr*, the fixed or contingent nature of the fee, is no longer a valid factor to

PAGE 6 – OPINION AND ORDER ON FEES AND EXPENSES

performance of counsel may not be adequately accounted for in the lodestar calculation);

*Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988) (finding that although in

ordinary cases the "results obtained" factor is deemed adequately accounted for in the lodestar

calculation, it may serve as a basis to adjust the lodestar when "an attorney's *reasonable*

expenditure of time on a case [is not] commensurate with the fees to which he is entitled").

## DISCUSSION

### A. Attorney's Fees

Plaintiff initially requested $826,313 in attorney fees under 42 U.S.C. § 1988. ECF 221.

This amount is comprised of $812,543 for work performed (2,656.9 hours) in the litigation other

than the preparation of the fee petition, and $13,770 for work performed (41.3 hours) in

preparing the fee petition. ECF 223 at 8-9[3]; ECF 223-3; ECF 223-14. With its reply, Plaintiff

requested an additional $22,357.50 for work performed (69.5 hours) in responding to

Defendants' objections to Plaintiff's request for fees and costs. ECF 270 at 5; ECF 270-2.

Plaintiff arrived at these amounts by multiplying the number of hours expended on the litigation

(including the fee petition) by the hourly rates for Plaintiff's attorneys and paralegals. Plaintiff

notes that these totals reflect reductions that Plaintiff has already made "where time arguably

could have been more efficiently spent." ECF 222 at 10. Plaintiff contends that both the number

of hours worked for which fees are requested and the hourly rates requested are reasonable and

that PLN's fee request is a "conservative" lodestar. *Id.* Plaintiff does not seek any upward

adjustment to its lodestar amount.

---

consider in determining reasonable attorney's fees. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 n.7 (9th Cir. 2011).

[3] Page numbers cited for ECF documents refer to the ECF page number at the top of the page, even if the document's internal pagination may differ.

Defendants oppose Plaintiff's request on four primary grounds. First, Defendants argue that plaintiff did not achieve a more favorable result than the offer of judgment tendered by Defendants. Second, Defendants argue that the number of hours that Plaintiff's attorneys and paralegals expended on the litigation were excessive in light of the significance and complexity of the lawsuit and the results obtained. Third, Defendants argue that the hourly rates requested by Plaintiff's attorneys are unreasonable. Fourth, Defendants argue that the time spent by Plaintiff's attorneys on specific tasks should be excluded or reduced. Defendants' arguments are addressed in turn.

### 1. Defendants' Offer of Judgment

Defendants argue that under Rule 68(d) of the Federal Rules of Civil Procedure, if a defendant provides an offer of judgment in a Section 1983 case (where attorney fees may be awarded as costs to a prevailing plaintiff) and the prevailing plaintiff does not obtain a final judgment that is more favorable than the unaccepted offer, the plaintiff may not recover fees or costs incurred after the date of the offer. Defendants assert that they provided Plaintiff with an offer of judgment on March 6, 2012, less than two months after the lawsuit was commenced, in the amount of $21,000. ECF 245-8. Defendants further assert that Plaintiff's claim for money damages ultimately was resolved by stipulation for $15,000, which is $6,000 less than Defendants' unaccepted offer of judgment for $21,000. Based on these facts, Defendants conclude, "plaintiff's counsel should not be compensated for the work performed after the offer was issued," which Defendants calculate to be $710,608.50. ECF 244 at 8-9.

Defendants' argument, however, omits a crucial point. In Plaintiff's Complaint, filed on January 13, 2012, Plaintiff sought preliminary and permanent injunctive relief and declaratory relief, in addition to money damages. ECF 1. Plaintiff told Defendants as early as February 6, 2012, that Plaintiff would only discuss resolving Plaintiff's claim for money damages, attorney

fees, and costs after Defendants agreed to stipulate to a permanent injunction and consent decree. ECF 245-7. Yet, when Defendants provided their offer of judgment to Plaintiff on March 6, 2012, that offer expressly stated that "defendants do not offer to allow judgment against them for declaratory relief, a preliminary injunction and a permanent injunction or any other equitable relief." ECF 245-8.

A judgment containing declaratory and permanent injunctive relief can be more valuable to a plaintiff than money damages. In *Lish* v. *Halper's Magazine Foundation,* 148 F.R.D. 516, 519-520 (S.D.N.Y. 1993), the court held that a final judgment containing a judicial determination of copyright violation but no money damages was more favorable than the offer of judgment that included money damages only. The court explained that:

> [M]oney damages are not the only measure of whether a plaintiff has obtained a 'more favorable' judgment within the meaning of Rule 68 . . . . [T]he judicial determination of copyright violation confers a benefit on a plaintiff which he would not have obtained merely by the entry of judgment in his favor: that is, to use the precedent established by a court finding in future instances.

*Id.* at 520; *see also, Lightfoot* v. *Walker*, 619 F. Supp. 1481, 1485 (D.C. Ill. 1985) (holding that a judgment including declaratory relief on constitutional claims and injunction was "far more favorable" than the Rule 68 offer that did not include the injunctive relief obtained); *Reiter* v. *MTA New York City Transit Authority,* 457 F.3d 224, 229 (2d Cir. 2006) (holding that a judgment of $10,000 plus reinstatement of employment was more favorable than an offer of judgment for $20,001 alone, and the district court's decision to enforce the offer was clearly erroneous and failed to "appreciate the significance of equitable relief in civil rights litigation").

In the present case, Plaintiff prevailed in obtaining a Judgment that provides both declaratory and permanent injunctive relief in the protection of free speech and procedural due process rights under the First and Fourteenth Amendments. This result, by itself, would exceed

in value Defendants' Rule 68 offer of $21,000. When the additional $15,000 stipulated payment is included, this is not even a close question. Defendants' argument under Rule 68 is rejected.

### 2. Total hours expended by Plaintiff's counsel

Defendants argue that Plaintiffs should not recover for the time spent pursuing unsuccessful arguments and claims. Defendants cite *McCown* for the proposition that the district court erred when it failed properly to analyze the plaintiff's fee request in light of whether the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for the fees award. *McCown*, 565 F.3d at 1103. In *McCown*, the plaintiff sued a city, the city's police department, and an individual officer under 42 U.S.C. § 1983, alleging excessive force in connection with the plaintiff's arrest. After most of the claims asserted by the plaintiff were dismissed on summary judgment, the plaintiff settled his remaining claim for $20,000, not including attorney fees. *Id.* at 1100. The plaintiff received no other relief. *Id.* at 1104. The plaintiff then sought more than $301,000 in attorney's fees. *Id.* at 1101. After making several reductions to the hourly rates and the number of hours expended, the Court award the plaintiff $200,000 in fees. *Id.* at 1102. The defendants appealed.

In *McCown*, the Ninth Circuit held that "[a] plaintiff is not eligible to receive attorney's fees for time spent on unsuccessful claims that are unrelated to a plaintiff's successful § 1983 claim." *Id.* at 1103. The court explained, however, that "where the plaintiff presents different claims for relief that 'involve a common core of facts' or are based on 'related legal theories,' the district court should not attempt to divide the request for attorney's fees on a claim-by-claim basis. Instead, the court must proceed to the second part of the analysis and 'focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* (citations omitted). In *McCown*, the Ninth Circuit concluded that although the district court correctly treated all of the plaintiff's claims as related for purposes of

PAGE 10 – OPINION AND ORDER ON FEES AND EXPENSES

determining attorney's fees, the district court erred by not taking into account the plaintiff's limited success when determining a reasonable award. *Id*. at 1103-5. The Ninth Circuit directed the district court on remand to consider "whether, and to what extent, McCown's suit benefitted the public. The public benefit of a suit must have enough of an impact to justify a fully compensatory fee award despite limited success on damages claims." *Id*. at 1105.

In the pending case, Plaintiff's claims all involved a common core of facts or were based on related legal theories. Thus, as in *McCown*, the relevant inquiry is on the overall relief obtained by Plaintiff in relation to the hours reasonably expended. Defendants argue that PLN "continued to pursue this case even when defendants admitted liability for some portions, revised policies and offered monetary compensation." ECF 244 at 11. As with Defendant's first argument, based on Defendants' Rule 68 offer of judgment, the flaw in Defendants' argument here is that Plaintiff's lawsuit was about much more than money damages. Although Defendants admitted liability to some extent "for some portions" of Plaintiff's two claims, Plaintiff ultimately prevailed on liability beyond what Defendants were willing to concede. More importantly, Defendants were never willing to stipulate to permanent injunctive relief, relying solely on the argument that its current administration had no present intention to fail to abide by the Court's preliminary injunction order and any declaratory relief that may issue. The Court has previously explained why permanent injunctive relief was both necessary and appropriate with respect to Defendants' "postcard only" policy. *See* ECF 214 at 35-39 (Findings of Facts and Conclusions of Law). Because Defendants were never willing to stipulate to permanent injunctive relief or a consent decree, Plaintiff was required to proceed to trial to obtain that relief.

Further, the injunctive and declaratory relief entered in this case benefitted the public and not just the specific Plaintiff, PLN. Although society always benefits when constitutional rights

PAGE 11 – OPINION AND ORDER ON FEES AND EXPENSES

are enforced and protected, here other members of the public received a more tangible benefit as a result of PLN's successful lawsuit. This action brought specific injunctive relief not only to PLN but also to all inmates at the Jail and their family and friends and others who wish to correspond with them in ways not otherwise feasible under the Jail's "postcard only" policy. *See* ECF 214 at 14-15 (Findings of Facts and Conclusions of Law). And this benefit will continue to accrue to others in the future in light of the permanent nature of the injunction.

Notwithstanding the benefit both to PLN and to the public generally resulting from the Court's final injunctive and declaratory relief, PLN spent a great deal of time in discovery, motion, and pretrial work on matters related to PLN's various theories of money damages, primarily "diversion of resources" and "frustration of mission." Ultimately, PLN chose not to litigate its claim for money damages to a final judicial resolution, but instead accepted a negotiated, and modest, payment from Defendants. Not every avenue that a party pursues in litigation needs to be successful in order to support a fee recovery for time actually spent, and here PLN prevailed on all of its key liability claims and received valuable and important injunctive and declaratory relief, in addition to its modest amount of stipulated money damages. Considering all of the fee-related factors that this Court must consider, the fact that the timesheet summaries submitted in support of the fee petition are relatively "massive," and that Plaintiff has already reduced its fees to some extent before submitting its fee request (*see* ECF 222 at 10), the Court believes it appropriate to reduce Plaintiff's fee request by a modest ten percent "haircut." In the Court's judgment, this result is more appropriate than imposing either a greater reduction or no reduction at all. Such a small reduction is within the discretion of the Court without the need for a more specific explanation. *Gonzalez v. City of Maywood*, 729 F.3d at 1203; *see also Moreno*, 534 F.3d at 1112. The Court so exercises its discretion here.

### 3.  Hourly rates of Plaintiff's counsel

Plaintiff seeks to recover the following hourly rates for the following five attorneys and four paralegals:

| | |
|---|---|
| Jesse Wing (attorney, 21 years experience) | $400 |
| Marc Blackman (attorney, 39 years experience) | $400 |
| Lance Weber (attorney, 15 years experience) | $350 |
| Katherine Chamberlain (attorney, 8 years experience) | $300 |
| Alissa Hull (attorney, 2 years experience) | $210 |
| Troy Locati (investigator/senior paralegal) | $175 |
| Carrie Wilkinson (senior paralegal) | $125 |
| Zach Phillips (paralegal) | $105 |
| Kara McBride (paralegal) | $90 |

ECF 223 at 8 (Declaration of Jesse Wing).

Plaintiff submitted several declarations describing the skills and experience of these attorneys and paralegals. Plaintiff also submitted eight declarations from experienced and well respected Oregon litigation attorneys, including several attorney fee experts, who support the reasonableness of the rates sought by Plaintiff. *See* Declarations of Carol J. Bernick (ECF 226), Charles F. Hinkle (ECF 227)[4], Gregory P. Lynch (ECF 228), David B. Markowitz (ECF 229), Robert Meyer (ECF 230), Daniel H. Skerrit (ECF 231), Dana L. Sullivan (ECF 232), and Eric D. Wilson (ECF 233).

---

[4] The Court notes that Mr. Hinkle's declaration provides the standard billing rate in 2007 for the undersigned when this district judge was then an attorney in private practice with 26 years of experience. The hourly rate listed for 2007 is $495.

PAGE 13 – OPINION AND ORDER ON FEES AND EXPENSES

Defendants argue that counsel should be compensated "at the prevailing rate in the community for similar work; no more, no less." ECF 244 at17 (citing *Moreno*, 534 F.3d at 1111). The Court agrees with this principle. Defendants argue that Plaintiff's requested hourly rates are excessive, not in line with the OSB 2012 Survey, and higher than rates awarded in other cases to the attorneys in this case. In support of their position, Defendants rely on, among other things, three declarations. *See* Declarations of Susan Dunaway (ECF 247), Kathryn Mary Pratt (ECF 249), and William Blair (ECF 248).

Plaintiff refers the Court to the OSB 2012 Survey, "Hourly Billing Rate by Total Years Admitted to Practice, Portland." In comparison to those rates, Plaintiff's requested rates are essentially at or below the 75th Percentile for all attorneys except the most junior, Ms. Hull (where her requested rate is $210, the OSB 75th Percentile rate for her level of experience is $198, and the 95th Percentile rate for her level of experience is $246). The Court also notes that Jesse Wing's requested rate is $400, while the OSB 75th Percentile rate for his level of experience is $399, which is essentially $400.

Defendants argue that the Court should also give weight to other OSB categories, such as "Civil Litigation, Plaintiff (excludes personal injury)." *See, e.g.*, Pratt Decl., at ¶¶ 6, 8. This category shows lower average hourly rates, but is not adjusted to reflect the experience of counsel. The Court accepts the general proposition that, other things being equal, more experienced attorneys generally provide greater value to clients in terms of efficiency, expertise, and insight, especially in more complex areas of litigation, than less experienced counsel. This would justify higher hourly rates for more experienced counsel, and the market confirms this proposition. Hence, it is more appropriate to consider the OSB 2012 Survey category of "Hourly Billing Rate by Total Years Admitted to Practice," even though a fair argument can be made that

this category may overstate a fair rate in some cases. *See* Pratt Decl., at ¶ 8. It also, however, may understate a fair rate in other cases. *See* Markowitz Decl., at ¶¶ 6-7.

In addition to reviewing the OSB 2012 Survey, the Court has also reviewed the Morones 2012 Survey of commercial litigation fees. The Court notes that Morones fee surveys in earlier years were able to achieve higher rates of survey responses than comparable OSB surveys. *See* Markowitz Decl., at ¶ 7. (Data regarding respective survey response rates for the two 2012 surveys were not presented to the Court.) When viewed in the light of the Morones 2012 Survey, the attorney's fees requested by Plaintiff are below average for Wing and Blackman ($400 versus $412 and $448, respectively), slightly above average for Webber ($350 versus $346), above average for Chamberlain ($300 versus $269), and below average for Hull ($210 versus $269).

Finally, Defendants ask the Court to consider that many of the same attorneys for Plaintiff were awarded lower hourly rates in a similar case brought after the pending lawsuit began and after this Court issued its preliminary injunction in favor of Plaintiff in this case. *See Prison Legal News v. Umatilla County*, 2013 WL 2156471 (D. Or. May 16, 2013). The defendants in that case, however, served an offer of judgment, which Plaintiff accepted less than two months after that litigation began. *Id.* at *2. In response to the plaintiff's motion for attorney's fees in that case, U.S. Magistrate Judge Sullivan found that Plaintiff's counsel have "significant experience in the realm of prisoners' rights litigation, a specialized area of the law," but concluded that "because this case was resolved in its early stages, before any litigation on the merits or significant discovery, the specialization and experience of, and risk to, PLN's counsel is not a considerable factor." *Id.* at *6. Thus, this Court does not give significant weight to the hourly rates awarded to the plaintiff in the *Umatilla County* case, notwithstanding a significant overlap in the plaintiff's counsel in that case with Plaintiff's counsel here.

All of these factors have been considered by the Court, which finds the requested hourly rates for Plaintiff's attorneys and paralegals to be reasonable. The requested rates adequately reflect the prevailing market rates in the community, which the Court determines to be Portland, Oregon. Plaintiff's requested rates are consistent with both the 2012 OSB Survey (75th Percentile, Total Years Admitted to Practice, Portland) and the 2012 Morones Survey of Commercial Litigation Fees in Portland. They are also supported by the expertise and experience of Plaintiff's attorneys and paralegals and the complexity of prisoners' rights constitutional litigation, especially in the context of free speech rights under the First Amendment.

### 4. Specific tasks

Defendants also raise nine objections to specific tasks that Plaintiff includes in its request for attorney's fees. Defendants' objections are addressed in turn.

### a. Pre-litigation investigation and preparation of the complaint

Defendants argue that the time spent by Plaintiff investigating this matter before filing its Complaint and in researching and drafting the Complaint (166.7 hours, valued at $42,834) is excessive. ECF 244 at 21. The Complaint in this case was filed on January 13, 2012. ECF 1. Defendants note that in 2011 Plaintiff filed three lawsuits in other jurisdictions challenging similar "postcard only" policies. ECF 244 at 22. Defendants further note than in 2009, 2010, and 2011, Plaintiff filed four lawsuits in other jurisdictions, addressing other issues, but also seeking preliminary injunctive relief. *Id.* at 23. Defendants further argue that Plaintiff conducted this pre-litigation activity without ever "reaching out" to Defendants "to let them know that plaintiff believed [Defendants'] policies were unconstitutional." *Id.* at 21.

The Court observes that Plaintiff's Complaint, ECF 1, is factually detailed and appears to have been carefully and painstakingly constructed. The Court further observes that there is no obligation on a civil rights plaintiff to contact a putative defendant before filing suit. That said,

PAGE 16 – OPINION AND ORDER ON FEES AND EXPENSES

the number of hours spent on pre-litigation investigation and preparation of the complaint does seem somewhat high. For that reason, among others, the Court will assess a ten percent "haircut."

### b. Office conferences

Defendants argue that Plaintiff's fee petition reflects "multiple office 'conferences' among attorneys," and Defendants identify approximately 16 hours of such conferences. ECF 244 at 23-24. The Court has reviewed Defendants' objection and concludes that it is without merit.

### c. Clerical tasks

Defendants argue that they have "identified a number of non-billable clerical tasks" that should be removed from any fees that are awarded. ECF 244 at 24. According to Defendants, these tasks consist of "coding" by paralegals Kara McBride and Carrie Wilkinson (35.4 hours, valued at $4,145) and "IT tasks" by investigator/paralegal Troy Locati (45.9 hours, valued at $8,032.50). *Id*. at 25. With regard to the coding tasks performed by the two paralegals, the Court has reviewed Defendants' objection and concludes that it is without merit. With regard to the "IT tasks" by investigator/paralegal Troy Locati, these tasks include, according to Defendants, copying [electronic] files, updating laptops, and conferring with others about IT tasks. Plaintiff explains that the work performed by these paralegals are all "core paralegal and non-clerical work." ECF 271 at 18; ECF 266 at 2. Although these tasks are sufficiently related to legal work to be recoverable, charging an hourly rate of $175 for Mr. Locati has not been sufficiently justified and, therefore, may be somewhat excessive. *See* ECF 266 at 2-3. Rather than perform a more detailed analysis of his specific entries, however, which have a total value of approximately $8,000, the Court has considered this issue, along with others, in its decision to impose a ten percent "haircut" overall.

### d.   Time spent pursuing unsuccessful legal theories

Defendants argue that the time spent by Plaintiff pursuing unsuccessful legal theories (369.8 hours, valued at $120,810) and the time spent by Plaintiff focusing on their money damage claims (282.3 hours, valued at $94,407) are excessive. ECF 244 at 26. The Court has reviewed Plaintiff's time entries. These issues, among others, support the Court's ten percent "haircut."

### e.   Electronic formatting of emails

Defendants argue that the time spent by Plaintiff litigating over the production of Defendant's emails in a particular format (12.65 hours, valued at $3,575) is excessive. ECF 244 at 27. The Court has reviewed Plaintiff's time entries. Other than generally supporting the Court's ten percent "haircut," the Court concludes that Defendants' argument is unpersuasive.

### f.   Time spent litigating the motion for preliminary injunction

Defendants argue that the time spent litigating the motion for preliminary injunction (327.8 hours, valued at approximately $95,000) is excessive. ECF 244 at 27. The Court has reviewed Plaintiff's time entries. Other than generally supporting the Court's ten percent "haircut," the Court concludes that Defendants' argument is unpersuasive.

### g.   Time spent preparing the motion for attorney fees

Defendants argue that "Plaintiffs are not entitled to payment for fees and costs associated with preparing the fee motion because the offer of judgment limited recovery to fee[s] incurred prior to the date of the offer." ECF 244 at 28. The Court has already rejected this argument. *See* Section A(1) *supra*. Defendants further argue, in the alternative, that the time spent by Plaintiff in preparing its fee petition (41.3 hours, valued at $13,770) is excessive. ECF 244 at 28. The Court has reviewed the extensive and well documented fee petition and rejects Defendants' argument.

### h.  Block Billing

Defendants argue that "[d]ue to the prolific use of block billing by plaintiff's counsel in this case, defendants could not segregate all the tasks as multiple tasks would be included in individual time entries. Thus, defendants request that the court exercise its discretion in making an overall reduction to account for the block billing." ECF 244 at 29. The Court has reviewed Plaintiff's time entries, ECF 223-3, ECF 224-2, ECF 225-2, and ECF 270-2, and does not see "prolific use of block billing" as represented by Defendants. In fact, Plaintiff's counsel appears to follow the practice and requirements of this district by including separate descriptions of work and separate time entries whenever any daily expenditure of time exceeds three hours. Plaintiff's time records are to be commended, and Defendants' argument is without merit.

### i.  Other Deductions

Defendants also object to other specific time entries, which Defendants argue should not be recovered. These entries, more fully described in the Declaration of Gregory R. Roberson (ECF 245 at ¶¶ 16-18), include what Defendants characterize as "inapplicable legal issues." ECF 244 at 29. The Court has reviewed the objections described in ¶¶ 16-18 of the Roberson Decl. and finds the objections to be without merit. These items are fairly recoverable to a prevailing plaintiff.

### 5.  Summary of final lodestar calculations

| | |
|---|---|
| Fees requested in initial fee petition:<br>(ECF 223 at 8 ¶ 23, ECF 223-3, ECF 224-2, ECF 225-2)<br>(not including the preparation of the fee petition) | $812,543.00 |
| Fees requested for the initial preparation of the fee petition:<br>(ECF 223 at 9 ¶ 25, ECF 223-14) | $13,770.00 |
| Additional fees for time spent after the initial fee petition:<br>(ECF 270-2) | $22,357.50 |
| Sub-total: | $848,670.50 |

PAGE 19 – OPINION AND ORDER ON FEES AND EXPENSES

| | |
|---|---|
| Less ten percent reduction ("haircut") | –$84,867.05 |
| Net fee award | **$763,803.45** |

## B. Expenses

Plaintiff requests $38,373.01 in litigation expenses pursuant to 42 U.S.C. § 1988.

ECF 221; ECF 223 at 8; ECF 223-13; ECF 224 at 6; ECF 224-6; and ECF 225-2 at 15-16.

Defendants object on several grounds. ECF 250. First, Defendants argue that Plaintiff did not

submit a cost bill pursuant to 28 U.S.C. § 1920. Second, Defendants argue that several of the

costs requested by Plaintiff are not recoverable under 28 U.S.C. § 1920 or 28 U.S.C. § 1821.

Third, Defendants argue that Plaintiff has failed to provide adequate documentation for some of

the costs requested. *Id*. Defendants' arguments are not well taken, primarily for the reason that

Defendants fail to appreciate the distinction between "taxable costs" recoverable by a prevailing

party pursuant to 28 U.S.C. § 1920 and non-taxable costs that may be awarded as part of a

reasonable attorney's fee under an expense-shifting statute, such as 42 U.S.C. §1988.

Under 28 U.S.C. § 1920, a judge or clerk of the court "may tax as costs" certain expenses

specifically described in, and limited by, that statute when a party timely files a "bill of costs."

Such expenses are referred to as "taxable costs," and generally they may be recovered by a

prevailing party pursuant to Rule 54(d) of the Federal Rules of Civil Procedure. The United

States Supreme Court has explained that Section 1920 "define[s] the full extent of a federal

court's power to shift litigation costs absent express statutory authority." *W. Va. Univ. Hosps.,*

*Inc. v. Casey*, 499 U.S. 83, 86 (1991). Thus, absent express statutory authority, a prevailing party

who timely files a bill of costs may not recover expenses other than those that are specifically

authorized by Section 1920.

In the pending civil rights lawsuit, however, PLN is not seeking to recover taxable costs

pursuant to 28 U.S.C. § 1920. Instead, PLN invokes the express statutory authority of 42 U.S.C.

PAGE 20 – OPINION AND ORDER ON FEES AND EXPENSES

§ 1988 as the basis for its right to recover its litigation expenses, regardless of whether those expenses would be recoverable under 28 U.S.C. § 1920.

Under 42 U.S.C. § 1988, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Under well-established precedent, this statutory provision allows the "recovery of reasonable out-of-pocket expenses that 'would normally be charged to a fee paying client.' Expenses normally charged to fee-paying clients include 'photocopying, paralegal expenses, and travel and telephone costs.'" *Woods v. Carey,* 722 F.3d 1177, 1179 n.1 (9th Cir. 2013) (citations omitted). In other words, under a statute allowing for a reasonable attorney's fee as part of the costs, such as 42 U.S.C. § 1988, "'reasonable attorney's fees' include litigation expenses . . . when it is 'the prevailing practice in a given community' for lawyers to bill those costs separate from their hourly rates." *Grove v. Wells Fargo Financial California, Inc.*, 606 F.3d 577, 580 (9th Cir. 2010) (citations omitted).

Thus, Defendants' arguments that Plaintiff failed to file a bill of costs under 28 U.S.C. § 1920 and that some of the expenses requested by Plaintiff in its motion are not taxable costs under that particular statute are not well taken. Further, Defendant does not argue that the expenses requested by Plaintiff in its motion are not expenses normally charged to fee-paying clients. The Court has reviewed the specific expenses identified by Plaintiff and concludes that they are the sorts of expenses normally charged to fee-paying clients. Finally, the Court is satisfied with the evidentiary support provided by Plaintiff. Defendants argue that Plaintiff only lists the costs of depositions but has failed to provide "deposition invoices." Defendants cite no legal authority that requires the production of invoices. In the absence of a reason to question the representations of Plaintiff's counsel, the Court accepts those representations as sufficient. *See*

PAGE 21 – OPINION AND ORDER ON FEES AND EXPENSES

ECF 223 at 15-16; ECF 223-13. Accordingly, under 42 U.S.C. § 1988, the Court allows as part

of Plaintiff's reasonable attorney's fees the identified and requested litigation expenses in the

amount of $38,373.01.

## CONCLUSION

Plaintiff's motion for award of attorney's fees and expenses (ECF 221) is granted in part.

Pursuant to 42 U.S.C. § 1988, Plaintiff is awarded $763,803.45 in attorney's fees and $38,373.01

in expenses.

**IT IS SO ORDERED**.

DATED this 24th day of March, 2014.


                                          /s/ Michael H. Simon
                                          Michael H. Simon
                                          United States District Judge